02-09-272-CV












 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00272-CV

 

 


 
 
 Lori Rosenstein
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Howard Rosenstein
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

FROM THE 231st
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

----------

In
this appeal from a divorce and suit affecting the parent-child relationship,
Appellant Lori Rosenstein raises no property issues.  Instead, Lori
contends that the trial court abused its discretion (1) by conducting with no
notice, in her absence, and over her trial counsel’s objection a bench trial on
possession, access, and child support after she received a favorable jury
verdict the previous day; (2) by modifying the possession order to give
Appellee Howard Rosenstein more days of possession of their two children than
Lori, who the jury named as joint managing conservator with the exclusive right
to determine the primary residence of the children; and (3) by reducing child
support based on Howard’s estimate of future earnings instead of relying on
actual net resources, violating section 154.062 of the family code.  Lori
also contends that (4) the divorce decree giving Howard possession of the
children on holidays based on his Jewish religion, which are longer than the
holidays on which possession of the children was awarded her, violates the
Establishment Clause of the First Amendment to the Constitution of the United
States as read into the Fourteenth Amendment Due Process Clause.  Because
we hold that the trial court did not abuse its discretion by conducting the
bench trial in Lori’s absence when her lawyer was present and participated,
that Lori did not preserve her notice complaint, and that the trial court did
not abuse its discretion in setting child support, we affirm the trial court’s
judgment as to all matters except the possession of the children.  Because
we hold that the possession order violates Lori’s rights under the Establishment
Clause, we reverse the portion of the trial court’s judgment addressing
possession and remand this case to the trial court solely for a new trial on
that issue.

I. 
Summary of Facts and Procedural Facts

In
2005, Lori filed for divorce from Howard after more than nine years of
marriage.  About three and one-half years after she filed her petition, a
jury heard some issues concerning the couple’s children, R.M.R. and R.D.R.,
born in 1996 and 1999 respectively.  Lori chose not to provide the
reporter’s record of the jury trial.  Question 3 of the jury charge asked,
“Which joint managing conservator should have the following exclusive
rights:  1. Choice of religion” and “2. Educational decisions.”  The
jury found that Lori and Howard should be joint managing conservators, that
Lori should have the exclusive rights to designate the children’s primary
residence and to make their educational decisions, and that Howard should have
the exclusive right to direct the children’s religious training.[2]

Lori
and Howard reached an agreement on property issues.  The day after the
jury portion of the trial ended, the visiting judge hearing this matter
conducted a bench trial on the remaining issues of possession, access, and
child support.  Lori was not present at the bench trial, but her trial
counsel appeared and participated.  There is no evidence that she
requested a continuance.  After Lori’s trial counsel cross-examined
Howard, the sole witness, she stated,

[LORI’S TRIAL
COUNSEL]:       . . . [I] pass—to the
extent that we are having a trial and I object.  There was no
notice.  I’ve got no documents to present to the Court what the cost of
insurance, and I have not had an opportunity to bring my client.

THE COURT:       
Your client had notice of this hearing today.  It was given to her in open
court yesterday.  We’ve been in trial for eight days.  It’s
overruled.

After
the trial was completed, the visiting judge who heard this matter signed a
decree on November 21, 2008, awarding Lori the exclusive right at all times to
make decisions concerning the children’s education and repeatedly awarding
Howard the exclusive right at all times to choose the children’s
religion.  But the decree also awarded Lori the exclusive right to choose
the children’s religion during her period of possession.  That version of
the decree also awarded Howard superior, exclusive possession of the children
on several Jewish religious holidays:  Rosh Hashanah, Yom Kippur, Sukkot,
Shemeni Atzeret, Simchas Torah, Hanukkah, Tu Bishvat, Purim, Lag Baomer,
Passover, Shavuot, and Tisha B’Av.

The
visiting judge hearing this matter issued findings of fact and conclusions of
law related to the November 2008 decree on January 5, 2009.  The same
visiting judge heard Lori’s amended motion for new trial, which she had filed
December 19, 2008.  The visiting judge denied Lori’s motion for new trial
but modified the decree on its own motion on January 30, 2009.

Lori
filed a motion for new trial from the modified judgment on February 20,
2009.  A different visiting judge issued amended findings of fact and
conclusions of law on March 16, 2009.  An elected judge of a civil
district court[3]
granted Lori’s motion for new trial on March 26, 2009.  On May 12, 2009,
however, the visiting judge who heard this case struck the amended findings of
fact and conclusions of law issued by the other visiting judge.  And on
May 14, 2009, the visiting judge who heard the case signed an agreed order
setting aside the elected civil district judge’s order granting Lori’s motion
for new trial and therefore reinstating the modified judgment.  Lori filed
another motion for new trial after the reinstatement, which the visiting judge
who heard this case denied.  Lori also requested findings of fact and
conclusions of law.

On
June 15, 2009, the visiting judge who heard this case signed the “Amended
Findings of Fact and Conclusions of Law” as prepared by Howard’s counsel. 
They provide in relevant part:

5.      
It is in the best interest of the children that LORI . . . and HOWARD . . . be
appointed joint managing conservators of the children and that LORI . . . have
the right to designate the children’s primary residence.

Findings of Fact—Possession

6.      
The periods of possession vary from the Standard Possession Order for the
following reasons:

(a)    
the children are enrolled in school;

(b)    
HOWARD[’S] flexible work schedule enables him to provide the children the
option to participate in extracurricular activities at their selection;

(c)    
HOWARD . . . requested an extended visitation Order at the time of rendition of
the original order;

(d)    
LORI . . . failed to oppose the extended visitation Order with any evidence
whatsoever at the hearing when HOWARD . . . requested an
extended visitation Order at the time of rendition of the original extended
visitation Order;

(e)     LORI . . .
has engaged in a course of conduct during the pendency of the instant
proceeding that has the effect of alienating the children from HOWARD . . . ;

(f)     
HOWARD . . . has demonstrated during the pendency of this
instant proceeding that he will foster the relationship between LORI . . . and
the children during his periods of possession;

(g)     LORI . . .
was given notice in open Court of the date and time of the hearing on
possession, visitation, and access;

(h)     LORI . . .
failed to appear at the hearing on possession, visitation, and otherwise offer
any evidence;

(i)     
HOWARD . . . appeared at the hearing on possession, visitation, and access and
offered testimony supporting his request for an extended visitation Order;

(j)      The
testimony offered by HOWARD . . . concerning possession, visitation, and access
was credible and was not inconsistent with the current emotional, educational,
and physical well-being of the children;

(k)     LORI . . .
has misinformed the Court of the actual out-of-pocket expenses incurred for the
insurance for the children during the pendency of this cause;

(l)     
HOWARD . . . , based on the testimony presented, is a positive influence on the
children’s lives;

(m)    HOWARD[’S] child
support obligation as ordered was supported by evidence which was not contested
by LORI . . . ;

(n)     LORI . . .
interfered intentionally, on more than one occasion, with HOWARD[’S] superior
right to child custody during the pendency of the cause, resulting in further
alienation of the children, necessitating a much broader visitation schedule
for HOWARD . . . , as imposed by this Court.  Based on
the evidence presented at trial and at hearings, the Court finds that the
evidence was overwhelming that LORI . . . intentionally
interfered with HOWARD[’S] superior right to possession of the children during
the pendency of this cause.  The evidence supporting this finding
includes, without limitation, the testimony concerning LORI[’S] attempt to
withhold the children from  HOWARD . . . during a period of his superior
right of possession on February 28, 2007, secreting the children on that day, removing
the children from school on that day under false pretenses, wrongfully alleging
to the teachers and this Court that she was instructed to do so by Child
Protective Services.  Subsequent testimony at trial by the CPS
investigator, teachers, and admissions by counsel for LORI . . . confirmed
L[ORI’S] statements were false and defamatory, despite the testimony of
LORI . . . ;

(o)     LORI . . .
additionally intentionally failed to abide by the possession and access Order
entered by the Court after rendition necessitating a writ of attachment for the
children;

(p)     LORI . . .
made repeated allegations of physical and sexual abuse of herself and the
children by HOWARD . . . at trial and during the pendency
of this cause which were false based on the testimony presented at trial,
including, but not limited to the lead CPS Investigator[’]s findings that these
allegations “Did Not Occur”, and further evidenced by the Jury’s verdict
appointing HOWARD . . . as Joint Managing Conservator; and

(q)     HOWARD . .
. and LORI . . . are not prohibited under the terms of the Final Decree of
Divorce from exposing the children to any religious denomination provided such
exposure does not physically, mentally, or emotionally endanger the children.

Findings of Fact as Conclusions
of Law

7.      
Any finding of fact that is a conclusion of law shall be deemed a conclusion of
law.

. . . .

Conclusions of Law—Conservatorship

5.      
LORI . . . and HOWARD . . . should be named joint managing conservators of the
children with the rights and duties stated in the judgment, and LORI . . .
should be named as the conservator with the right to designate the children’s
primary residence.

Conclusions of Law—Possession/Extended
Possession Order

6.      
HOWARD . . . is entitled to periods of possession with [R.M.R.]
and [R.D.R.] under the terms and conditions set forth in the order as the terms
are in the best interest of the children.  The standard possession order
is not in the best interest of the children based on the following factors: 
(1) the age, developmental status, circumstances, needs, and best interest of
the children; (2) the circumstances of the managing conservator and of the
parent named possessory conservator; (3) the actions of LORI . . . during the
pendency of this cause evidencing attempts to alienate the children from HOWARD
. . . ; (4) LORI[’S] failure to offer any evidence as to what periods of
possession and access are in the best interest of the children; and (5) any
other relevant factors.

7.      
HOWARD . . . and LORI . . . are not prohibited under the terms of the Final
Decree of Divorce from exposing the children to any religious denomination
provided such exposure does not physically, mentally, or emotionally endanger
the children.  The Court expresses no opinion nor has it in the past
preferred the religious views of either Respondent or Petitioner.  The
parties are free to choose to expose the children to any religious denomination
and practices, if at all, provided such exposure does not physically, mentally,
or emotionally endanger the children.

8.      
The Modified Decree of Divorce signed on or about January 30, 2009, and the
conditions contained therein are in the best interest of [R.M.R.] and [R.D.R].

Neither
party complains of the voiding of the other visiting judge’s findings of facts
and conclusions of law or the agreed order voiding the civil district judge’s
granting of Lori’s motion for new trial.

II. 
Jurisdiction

Howard
contends that this court lacks jurisdiction because Lori filed her notice of
appeal late.  Howard relies on the agreed order voiding the civil district
judge’s order granting the motion for new trial but cites no law in direct
support of his proposition.  He makes no argument that the civil district
judge’s order was void independent of the agreement.  We hold that Lori’s
notice of appeal was timely even though the civil district judge’s order was
voided by agreement.

On
January 30, 2009, the visiting judge who heard this matter signed a modified
divorce decree.  Lori filed a timely motion for new trial on February 20,
2009.[4] 
On March 26, 2009, a civil district judge granted the motion for new
trial.  Under Baylor Medical Center, the trial court has power to
“ungrant” a previously granted motion for new trial at any time until a new
final judgment is signed, and the appellate deadlines run from the date of that
new judgment.[5]
 On May 14, 2009, the parties entered into an agreed order signed by the
visiting judge setting aside the March 26, 2009 order granting a motion for new
trial; that is, the agreed order “ungranted” the new trial.  Thus, the May
14, 2009 order reinstated the prior judgment of January 30, 2009.[6]  The appellate deadlines began anew
on the day of reinstatement, May 14.[7] 
On May 18, 2009, Lori filed a timely motion for new trial from the reinstated
judgment.[8] 
The filing of a motion for a new trial extends the filing deadline of a notice
of appeal to ninety days from the date of judgment,[9] or in this case, reinstatement of
judgment.[10] 
Accordingly, Lori’s notice of appeal, filed August 11, 2009, was timely filed.[11]

Howard
appears to implicitly argue without support that the agreement voiding the
civil district judge’s order operated to void that order from its inception and
somehow shortened the appellate timetable.  But Howard makes no explicit
argument that the civil district judge’s order was void from inception, nor is
there any basis for such an argument.[12] 
Further, the visiting judge signed the May 14, 2009 agreed order setting aside
the civil district judge’s March 26, 2009 order granting the motion for new
trial on the 104th day after signing the modified decree, and therefore still
within the visiting judge’s plenary power held by virtue of the filing of the
motion for new trial.[13] 
Accordingly, we reject Howard’s contention that Lori filed her notice of appeal
too late and hold that this court therefore does have jurisdiction to address
Lori’s issues.

III. 
Bench Hearing in Lori’s Absence

In
her first issue, Lori contends that the trial court abused its discretion by
conducting the bench trial on possession, access, and child support in her
absence and without notice to her after she received a favorable jury verdict
the previous day.  To clarify, we note that the issues of possession,
access, and child support were not submitted to the jury and are issues
reserved for resolution by the trial court.[14]

To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.[15] 
An appellate court cannot conclude that a trial court abused its discretion
merely because the appellate court would have ruled differently in the same
circumstances.[16]  An
abuse of discretion does not occur when the trial court bases its decisions on
conflicting evidence and some evidence of substantive and probative character
supports its decision.[17]

Lori
argues that she had no notice of the trial and that we should review the
judgment as a postanswer default judgment.  Her counsel, however, was
present and participated in the bench trial.  The judgment was therefore
not a default judgment but a judgment on the merits.[18]  Further, Lori’s trial counsel did
not object to the absence of notice until after she had completed her
cross-examination of Howard; the objection was therefore untimely and did not
preserve error.[19] 
Accordingly, we cannot say that the trial court abused its discretion by
conducting the bench trial in Lori’s absence.  We overrule Lori’s first
issue.

IV. 
Child Support

In her
fourth issue, Lori contends that the trial court abused its discretion by
setting child support based on an estimate of Howard’s future earnings instead
of leaving it at the temporary child support level of $1,500 per month. 
The trial court set child support at $843.25 per month.  In the modified
decree, the trial court stated the following findings and conclusions on child
support:

1.      
the amount of child support ordered by the Court is in accordance with the
percentage guidelines;

2.      
the amount of net resources available to Howard . . . per month is $3,373.00;

3.      
the amount of net resources available to Lori . . . per month is $2,600.00;

4.      
the amount of child support payments per month that is computed if the
percentage guidelines of section 154.129 of the Texas Family Code are applied
to the first $7,500 of Howard[’s] net resources is $843.25; and

5.      
the percentage applied to the first $7,500 of Howard[’s] net resources for
child support by the actual order rendered by the Court is 25 percent.

A
trial court has discretion to set child support within the guidelines
established by the legislature.[20] 
A trial court’s child support determination will not be reversed absent an
abuse of discretion.[21]

Section
154.062 of the family code provides,

(a) The court shall
calculate net resources for the purpose of determining child support liability
as provided by this section.

(b) Resources
include:

(1) 100 percent of
all wage and salary income and other compensation for personal services
(including commissions, overtime pay, tips, and bonuses);

(2) interest,
dividends, and royalty income;

(3) self-employment
income;

(4) net rental income
(defined as rent after deducting operating expenses and mortgage payments, but
not including noncash items such as depreciation); and

(5) all other income
actually being received, including severance pay, retirement benefits,
pensions, trust income, annuities, capital gains, social security benefits
other than supplemental security income, unemployment benefits, disability and
workers’ compensation benefits, interest income from notes regardless of the
source, gifts and prizes, spousal maintenance, and alimony.

(c) Resources do not include:

(1) return of
principal or capital [or]

(2) accounts
receivable . . . .

(d) The court shall
deduct the following items from resources to determine the net resources
available for child support:

(1) social security
taxes;

(2) federal income tax
based on the tax rate for a single person claiming one personal exemption and
the standard deduction;

(3) state income tax;

(4) union dues; and

(5) expenses for the
cost of health insurance or cash medical support for the obligor’s child ordered
by the court under Section 154.182.

(e) In calculating
the amount of the deduction for health care coverage for a child under
Subsection (d)(5), if the obligor has other minor dependents covered under the
same health insurance plan, the court shall divide the total cost to the
obligor for the insurance by the total number of minor dependents, including
the child, covered under the plan.[22]

Lori
argues that no evidence received during the bench trial reflected a change in
Howard’s circumstances or financial condition since the time temporary child
support was set.  She also argues that the trial court violated section
154.062 of the family code in lowering child support based on past income tax
records of his corporation.  Finally, she argues that the amount of child
support falls below the statutory guidelines.

Lori
has not brought any portion of the record demonstrating how the trial court
arrived at the temporary child support amount of $1,500 per month.  Howard
was the sole witness at the final bench trial.  Howard, a lawyer,
testified that he primarily represents plaintiffs and that his income is
typically derived from contingency fees.  In response to his counsel’s
question seeking an estimate of Howard’s earnings for 2008, the year of the
trial, Howard responded, “I’m just starting to pick back up from ‘07 and my
best calculations are maybe this year 40 to 50,000.  That’s pretty much
what I’m getting back up to, and that’s where we’re at right now in October.” 
Howard answered in the affirmative questions indicating that his tax return for
2007 was already before the court (although Lori did not bring such record to
this court), that it was a bad year, and that he’d only earned about $11,000 in
2007 and had been forced “to margin” about $80,000 from his stock and bond
accounts to live on that year.  He also testified that his “income [was]
starting to pick back up” and that “we’re looking about 40 to 50,000 this
year.  It was higher before and then it tanked and then it’s starting to
pick back up.”  He further stated that if he “had to guess, [he] would say
that [his income] would go up higher next year [2009].”  Although Lori’s
counsel cross-examined Howard, she did not ask him questions pertaining to child
support other than medical support, which is not at issue here.  The trial
court stated at the close of the bench trial that it would base child support
on Howard’s anticipated income of $50,000.

Using
the Office of the Attorney General’s 2009 Tax Charts, the trial court’s finding
in the January 30, 2009 modified divorce decree that Howard’s net monthly
resources are $3,373 indicates that the trial court placed Howard’s annual
gross income at around $51,000.[23] 
Given Howard’s testimony and the absence from the appellate record of any other
pertinent evidence before the trial court, we cannot conclude that the trial
court abused its discretion by basing child support on that figure or that the
monthly child support of $843.25 is below the statutory guidelines.  We
overrule Lori’s fourth issue.

V. 
Possession

In
her third issue, Lori contends that the trial court abused its discretion by
awarding Howard holiday possession based upon his Jewish religion, violating
the Establishment Clause of the First Amendment to the United States
Constitution as applied to the States through the Fourteenth Amendment.
 On direct examination by his counsel at the bench trial, Howard
testified,

Q.     
. . . [Y]ou are requesting after the jury’s verdict extended
visitation, correct?

A.     
That’s correct.

Q.     
Okay.  And what are you requesting from the Court?

A.     
I am requesting that every other week like first, third and fifth weekends
would be from pick up from school on Wednesday to drop off to school on Monday
mornings.

. . . .

Q.     
And her—her karate classes are on what day of the week?

A.     
Her karate class would be on—her pretest would be on Thursdays.

Q.     
Okay.  And you would take her to her pretest on Thursday, then her belt
test on Friday?

A.     
That’s correct.  Right.  Both [R.M.R.] and [R.D.R.] used to do
that.  That’s correct.

Q.     
And—

A.     
And Wednesdays were—are their midweek Hebrew classes.

Q.     
Yeah.  Wednesdays are important in a religious sense because of why?

A.     
Well, that’s the only way they could prepare for their bar and bas
mitzvah.  Ten years that they need to train for their bar and bas mitzvahs
starts—the midweek Hebrew classes start in third grade.

Q.     
And during the weeks that you do not have possession under any possession order
entered by this Court, what are you asking this Court to do concerning Sundays?

A.     
Sundays, I just want—I would like to have visitation.  I would need to
pick them up at 8:30 and drop them back off at Lori’s at 1:00 o’clock.

Q.     
And—and what would the purpose of that pick up and drop off be on those
Sundays?

A.     
So that [R.M.R.] and [R.D.R.] do not miss 50 percent of their Sunday school
teachings at the synagogue for their bar and bas mitzvahs.  They’ve been
missing 50 percent of them for three and a half years.

Q.     
And as far as—[R.M.R.]’s bar mitzvah is coming up in January, correct?

A.     
That’s correct.

Q.     
Okay.  And what is that—what date is that scheduled for?

A.     
The Saturday the 20—January 24th.

Q.     
Okay.  So you are asking this Court to grant you some—a period of time of
exclusive possession surrounding that bar mitzvah?

A.     
Yes.  I—I have some days with them under the regular schedule, but I’m
asking for some extra days so that it would end up being:  I’d have him
for one week before his bar mitzvah and one week after so that—that he would be
prepared for his bar mitzvah and there would be no—no disturbance or
interruptions.  I’d get him ready.  And then we can go do something
for him after his bar mitzvah.

Q.     
Okay.  So that period is from January 19th to January 27th, correct?

A.     
Yes.  I be—that’s correct.  I think it’s an eight-day period I’m
asking for there because the other days I already have.

Q.     
That surrounding his bar mitzvah so you can prepare and then celebrate
afterwards?

A.     
Yes.  He deserves it.

Q.     
And you would want [R.D.R.] with you also during that time period?

A.     
Absolutely.  It wouldn’t be the same without them together.  They’ve
always done everything—they go to mid-Hebrew together.  They study
together.  Yes.

. . . .

Q.      Now,
let’s talk about the—you were granted by the jury exclusive right to the
religious decisions concerning the children?

A.     
Yes, sir.

Q.     
Okay.  And—

[HOWARD’S
COUNSEL]:          May I approach,
Your Honor?

THE
COURT:        Yes, sir.

Q.      . . .
I’ll show you what I marked as Respondent’s Exhibit 1.  Do you recognize
that document?

A.     
Yes.  These are—these are Additional Temporary Orders, yes.

. . . .

Q.     
Okay.  And they’ve since then been altered and/or amended, correct?

A.     
Correct.

. . . .

(Respondent’s Exhibit No. 1 was
admitted.)

. . . .

Q.     
Okay.  And in that order it addresses approximately 12 Jewish holidays,
correct?

A.     
Yes.  Twelve Jewish holidays, correct.

Q.     
Twelve of the 30-something Jewish holidays, correct?

A.     
Yeah.  Yeah, there’s a lot of holidays.

Q.     
Right.

A.      We
picked only the major ones that we as a family celebrate.

Q.     
Okay.  So the holidays addressed in that order were holidays that [the
children] grew up celebrating on a regular basis?

A.     
Yes.  Those are the 12, yes.

Q.     
Okay.  And—and—and when I say “celebrate the holidays,” it’s not simply a
prayer at dinner—

A.     
No.

Q.     
—there are actual activities involved?

A.      Oh,
yes.  Yes.  For example, like the Shavuot holiday, which is the
giving of the torah.  We used to have all the kids come spend the night at
our house and do grab bags.  They would—we would do bible questions, bible
study.  And if the kids got the questions right, they get the girl grab
bag or the boy grab bag.  And whoever stood up the longest, they answered
the questions, won.

So these holidays aren’t just go to
services, say prayers, go home.  We lived these holidays.  That’s the
difference.  You know, it wasn’t just a reform Jewish existence like
you’re—you’ve seen in the standard court schedule that Jeff Kaiser actually
wrote the court’s schedule for the Jewish holidays.  And—and I talked to
him about that.  And he says he even forgot to even put in Shavuot, which
is one of the big ones.  But these are the real ones that we as a family
celebrated.

Q.     
Okay.  And did Lori ever protest or contest the celebration of these
holidays on a regular basis while y’all still lived together as a married
couple?

A.      For
many years she just—she wouldn’t get involved in a lot of those holidays. 
You know, I was the one in charge of all the kids when they came, you know, and
she wouldn’t do the Shavuot thing with us.  She’d go off to another
room.  She wouldn’t participate.  I couldn’t get her to
participate.  

Or going and lighting the candle
ceremonies on Hanukkah, that was—the kids and I were going to the lightings,
Hanukkah ceremony candles every eight nights and reading the eight-night
stories.  Every night, we’d read, in Hanukkah, the eight-night stories.
 Well, I would read them to the kids.  She would have little or no
part of any of that.

Q.     
Okay.  For example, one of the most recent holidays was Sukkot, correct?

A.     
Oh, yeah.  We just had seven days of Sukkot.

Q.      Seven
days of Sukkot.  And what is the traditional celebration for Sukkot?

A.     
You—you build a wooden structure in the back of your house to celebrate the
fes—

Q.     
It’s called a—

. . . . 

A.     
Sukkah is the building.

Q.     
Okay.  Okay.

A.      It’s
called Festival of Booths.  It’s a booth.  And you eat dinner in
there and you—you’re celebrating the first feast.  It’s like the Jewish
Thanksgiving.  That’s what I call it because it’s the first harvest.

Q.     
Okay.

A.     
Celebrates the first harvest.

Q.      So
[Lori] this year had possession of the children—

A.     
Yeah.

Q.     
—during Sukkot?

A.     
Yes.

Q.     
Pursuant to this flip-flop order every other year that she would get Sukkot,
correct?

A.     
Correct.

Q.     
And to your knowledge, did they celebrate Sukkot—

A.     
They didn’t.

Q.     
—in any way?

A.      They
didn’t celebrate Sukkot.  They didn’t celebrate Rosh Hashanah.  They
didn’t celebrate Simchat Torah.  They all ran in a row.  They
didn’t—they didn’t celebrate anything.  I’m the one—when I had them on Yom
Kippur, took them to Yom Kipp[u]r services and we had everybody come over to
the house from the synagogue.  But they did not—they did not celebrate a
single holiday when the four of them ran in a row.

Q.     
Okay.  And—and in your opinion, is it important to the emotional
well-being and the religious education of the children that they actually
participate in these 12 holidays that you’re asking the Court to award you
visitation during?

A.     
Yes.  It’s extremely important.  In fact, one of the best examples I
can give you is the Rosh Hashanah example.  Rosh Hashanah is one of the
holiest Jewish holidays that there is that we have always—none—none of the
Jewish children go to school on Rosh Hashanah.  You’re not supposed to go
to school.  It’s prohibited.  She sent them both to school. 
They’re not supposed to be in school.

And when it came to Yom Kippur, the
holiest day on Yom Kippur, these are the ten days of—Rosh Hashanah is two days
and Yom Kippur is one day, but it’s ten days in between.  They’re not
supposed to go to school on Rosh Hashanah.  They’re not supposed to go to
school on Yom Kippur.  Those are the only two days of the whole year that
they’re not supposed to go to school.  They didn’t go to school when they
were with me on Yom Kippur.  We were in services.  And then we
celebrate a break—fast at night.  But they were in—and I sent a letter to
the school for Yom Kippur excusing them because religious holidays are not
considered absences.

. . . . 

Q.      The
public schools actually excuse these absences for these Jewish holidays?

A.     
Right.  It doesn’t go against their record at all as an absence. 
It’s not considered an absence when it’s a religious holiday, but they were
sent to school on Rosh Hashanah.  And none of the kids were—I made sure
none of the kids went to school on Rosh Hashanah in all the years that we were
together.

But now that she had them, you
know—well, I got that e-mail from her, [w]ell, I have the kids on Rosh Hashanah
from X minute to Y minute and not one of those times did she let those kids
celebrate Rosh Hashanah.

Q.      Now,
there are—there are a few extra days here on these Jewish holidays.  If
there comes a time where, you know, [the children] say, Hey, we want to go see
our mommy today, are you going to have a problem with that?

A.      I’ve
taken them to her.  I have no problem if the kids say, Hey, can we go
early to Mom’s?  I got half a dozen e-mails saying can the—tell—asking
Lori, Can the kids come over to you early?  They want to go see a movie
with you or they want to have dinner with you or they want to do something with
you.  I said, Can I bring them early?  They want to do it.  I
don’t—the difference is I don’t use the kids as a sword to get at her.

Q.      Okay.

A.      If
the kids want to go see her—

Q.     
We’ve—we’ve been through all that.  We’re just—we need to stay focused on
what you want by way of visitation.

A.     
Sorry.  Sorry.

Q.     
Summarize for the Judge.  You’re asking—you’re asking for the periods that
you do not have your extended visitation on Sundays from 8:30 to 1:00 o’clock,
correct?

A.      8:30
to 1:00, yes.

Q.      And
then Wednesdays?

A.      Yes.

Q.      You
pick them up at school and take them back—back to school on Thursday morning
for the periods that are not—

A.      The
second and fourth weekends, yes.

Q.     
—periods that are not in—when you have them in your possession?

A.     
Right.

Q.      And
for the first, third and fifth weeks, you’re asking to pick the children up on
Wednesday from school?

A.      Yes.

Q.      And
take them to school Monday morning?

A.      Every
other week, yes.

Q.      So
that on Wednesdays you can take the children to their Hebrew lessons?

A.      Yes.

. . . .

Q.     
Okay.  And then you’re asking for the—the holidays, not flip-flop back and
forth because . . .

A.      She
does not celebrate the Jewish holidays.

Q.     
Okay.  So you would like those 12 Jewish holidays as outlined in that
previous order?

A.      Yes.

Q.      And
you’re also asking for just—just for this year, January 19th through the 27th,
to help [R.M.R.] prepare for and celebrate his bar mitzvah?

A.      Yes,
sir.  Yes.  That’s—that’ll be the culmination of his ten years of
studying.

On cross-examination, Howard testified as follows:

Q.      And
you are—are not willing, as I understand it, to exchange days with [Lori]. 
If—if the Jewish holidays fall during her periods of possession, you’re not
willing to exchange those days; is that correct?

A.      I’m
not willing to exchange those days?  No.  I—I—she doesn’t celebrate
the Jewish holidays.

Q.     
You’re not willing to give her additional days, not the Jewish holidays, but
additional days for possession and access if the Jewish holidays occurred
during her periods of possession?

A.      No,
ma’am.  I’ve lost so much time with my kids.  I need a lot of make-up
time with these kids.

Q.     
Okay.  And, for instance, if the Court orders the Jewish schedule that
you’re requesting during time periods, three weeks could go by and [Lori] won’t
have access to her children; is that correct?

A.     
Ma’am, it’s almost been three weeks and I haven’t seen [the children].

Q.     
That’s correct.  And that was you who came to court and wanted that Jewish
holiday schedule, is it not?

A.     
Yes.  I wanted the Jewish holiday schedule.  Not to exchange with her
on Jewish holidays that she doesn’t celebrate.  She uses them to just keep
them from me and that’s why [I] haven’t seen them in over three weeks.

In
the original decree, the visiting judge hearing this case awarded Howard
superior, exclusive possession of the children for twelve Jewish holidays and
also awarded him possession of the children

·        every first, third,
and fifth week for a period beginning at school’s dismissal on Wednesdays (or
3:00 p.m. if school is not in session) and ending when the first school day
after the weekend, Monday except in cases of school holiday, resumes (or 9:00
a.m. on Monday if school is not in session);

·        every remaining
Wednesday after school ends until school resumes Thursday (or every Wednesday
at 3:00 p.m. until Thursday at 3:00 p.m. if school is not in session); and

·        every remaining
Sunday from 8:30 a.m. until 1:30 p.m.,

except
during Lori’s limited summer period of possession.  That original version
also repeatedly awarded Howard the exclusive right at all times to choose the
children’s religion; at the same time it awarded Lori the exclusive right to
choose the children’s religion during her period of possession as well as the
right to direct the moral and religious training of the children during her
period of possession.  In her motion for new trial, Lori challenged (1)
Question No. 3 of the jury charge on Establishment Clause grounds, citing Larson
v. Valente[24] and In re
Knighton;[25] (2) the
trial court’s conducting the bench trial in her absence; (3) the
disproportionate awards of periods of possession, again relying in part on the
Establishment Clause to complain that the award of extra possession time to
Howard “block[ed her] almost entirely from being able to provide her children
with any religious instruction in her religious faith” and (4) child support.

         
At the hearing on Lori’s motion for new trial, the visiting judge agreed that
submitting Question No. 3, asking which parent should have the exclusive choice
of the children’s religion, was improper.  He indicated that he had given
Howard “a significant number of additional holidays” based on the jury’s answer
to the improper question and that he would strike that part of the decree that
was based on the jury’s answer.

The
visiting judge denied Lori’s motion for new trial but modified the decree on
his own motion on January 30, 2009.  The modified decree gives each parent
the right to direct the religious and moral training of the children during
each parent’s respective period of possession.  But the modified decree
also awards Howard possession of the children every Wednesday afternoon and
evening and every Sunday morning from 8:30 a.m. to 1:30 p.m. (except for Lori’s
holiday possession and limited period of summer possession) and on a majority
of Sunday afternoons and nights.  In addition, the decree awards Howard
possession of both children on their bar and bat mitzvahs and for several days
preceding and following those dates.  Further, while the modified decree
reduces Jewish holiday time awarded Howard from twelve to four holidays and
awards Lori every Thanksgiving, Christmas, New Year’s Day, and Easter holidays,
the modified decree also provides,

3.      
Provisions for Jewish Religious Holidays

To the extent Jewish
Religious Holidays conflict in any manner with other holidays or possession
orders addressed herein, the following Jewish Religious Holiday possession
order prevails. 
In addition to all other provisions for possession provided in this decree, IT
IS ORDERED that Howard . . . shall have the following exclusive
periods of possession on Jewish Religious Holidays:

Rosh Hashanah—In all years for a
period beginning at sunset the day prior to Rosh Hashanah and ending on the day
after Rosh Hashanah.

Yom Kippur—In all years for a
period beginning at sunset the day prior to Yom Kippur and ending on the day
after Yom Kippur.

Hanukkah—In all years for a
period beginning at sunset the day prior to Hanukkah holiday and ending on the
day after Hanukkah.

Passover—In all years for a
period beginning at sunset the day prior to the holiday and ending on the day
after Passover.  [Emphasis added.]

Some
observances of Jewish holidays last days.  It is unclear from the decree
whether Howard gets possession of the children for two nights and two days for
each Jewish holiday or for the length of the observance for each holiday plus
the day after the observance ends, and we do not need to sort that out here,
except to note that Christmas and Hanukkah celebrations often overlap, as do
the celebrations of Passover and Easter.[26]  We note that in any event, in year
2016, when R.D.R. is still a minor, Hanukkah begins the evening of December 24.[27]  Under the divorce decree, which
provides that Jewish holidays prevail over all other periods of possession,
Lori would lose her Christmas possession of R.D.R., as well as her New Year’s
Day possession if the decree were intended to give Howard possession for the
entire eight days of Hanukkah.[28]

As
the Supreme Court of the United States has provided, “The touchstone for our
analysis is the principle that the First Amendment mandates governmental
neutrality between religion and religion, and between religion and
nonreligion.”[29] 
As our sister court in Amarillo has explained, the Establishment Clause, made
applicable to the states by the Fourteenth Amendment,[30] 

mandate[s] a zealous protection of an individual’s
untrammeled right to religious belief so long as the teachings and practice of
that religious belief are neither illegal or immoral.  Accordingly, the
courts of this state would have no more power to, directly or indirectly,
attempt to effectuate by decree a conformance to, or condemnation of, certain
religious teachings or practices, than would the Legislature or the Congress
have the power to establish a state religion by law.  As relevant here,
that means that one’s religious beliefs, teachings, and practices, per se, are
not grounds for depriving a parent of his or her children unless the teachings
and practice of such beliefs are illegal or immoral.  Thus, it is beyond
the power of a court, in awarding the custody of a child or children[,] to
prefer the religious views or teachings of either parent, even though the
beliefs and practices of one parent might be more “normal” or more in accord
with majority religious views or practices.  Therefore, as this Court
earlier stated in the first appeal of this case, it is a fundamental principle
that the State cannot prefer the religious views of one parent over the other
in deciding the best interest of a child.[31]

We
do not know Lori’s religious preference, if any.  Howard testified that
she did not participate in the Jewish celebrations.  Howard’s counsel
stated at the hearing on her motion for new trial, “And my recollection of
the—of the trial testimony was that I’m really not sure what religion she
prefers.  If she’s going to remain Jewish or become Methodist, I don’t know. . . .
I think the time to give that testimony would have been at the hearing on
visitation and . . . access.”  Lori’s latest motion for new
trial, filed after the modified judgment was reinstated, indicates that giving
Howard possession every Sunday “completely precludes [her] having any
opportunity to provide her children with religious instruction on Sunday, which
is her primary day for attending her church.”  No evidence at the trial on
access and possession indicated that Lori’s beliefs about religion, whatever
they are, are “illegal or immoral.”

As
Lori notes in her statement of facts in her brief, the decree provides Howard
with additional possession of the children for religious instruction in his
faith while blocking her almost completely from being able to provide her
children with any religious instruction.  Howard argues that Lori
requested that he receive extended possession and the “four Jewish holidays” at
trial, yet he does not present the whole story.  Lori indicated at trial
that she was willing for Howard to have the four Jewish holidays as well as
Wednesday nights, but not every Sunday morning.  She further sought
additional periods of possession of the children in exchange for his Jewish
holiday possession.  As the decree now stands, absent her limited summer
possession, Lori has Easter and Christmas possession, but otherwise no Sunday
mornings, no Wednesday nights, and less than fifty percent of Sunday afternoons
and nights, and all her periods of possession are subject to Howard’s superior
right of possession during four Jewish holidays, the extent of which is not
made clear in the decree.  Given the total absence of evidence that Lori’s
religious preferences or preferences for no religion are illegal or immoral or
otherwise present a danger to the children, we hold that the possession order
violates Lori’s rights under the Establishment Clause.  We sustain her
third issue.  Because of our resolution of this point, we do not reach her
second issue.[32]

VI. 
Conclusion

Having
held that we have jurisdiction over this appeal and that the trial court did
not abuse its discretion in conducting a bench trial in Lori’s absence or in
setting child support, we affirm the trial court’s judgment as to child support
as well as to all unchallenged portions of the decree, including but not
limited to the divorce, the property division, conservatorship, and medical
support.  But having held that the possession order violates Lori’s rights
under the Establishment Clause, we reverse the trial court’s judgment as to the
possession order and remand this case for a new trial solely on the issue of
the possession of the children.[33]

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and
MCCOY, JJ.

DELIVERED: 
August 11, 2011














[1]See Tex. R. App. P.
47.4.





[2]See
Tex. Fam. Code Ann. § 105.002(c)(1)(B), (D), (2)(C) (West 2008) (stating
that party is entitled to verdict on issue of conservatorship and the
determination of which joint managing conservator has the exclusive right to
designate the child’s primary residence but that the trial court may not submit
to the jury questions on the issue of any other right or duty of a
conservator).





[3]See
Tex. R. Evid. 201(b).





[4]See
Tex. R. Civ. P. 329b(a).





[5]In
re Baylor Med. Ctr. at Garland, 280 S.W.3d 227, 230–31 (Tex. 2008).





[6]See
id. at 230.





[7]See
id. at 231.





[8]See
Tex. R. Civ. P. 329b(a).





[9]Tex.
R. App. P. 26.1(a)(1).





[10]See
Baylor Med. Ctr., 280 S.W.3d at 231.





[11]See
Tex. R. App. 26.1(a)(1).





[12]See
Tex. Gov’t Code Ann. §§ 24.169, 24.303, 24.601 (West 2004 & Supp.
2010); Reiss v. Reiss, 118 S.W.3d 439, 443 (Tex. 2003) (“In general, as
long as the court entering a judgment has jurisdiction of the parties and the
subject matter and does not act outside its capacity as a court, the judgment
is not void.”); see, e.g., Hagen v. Hagen, 282 S.W.3d 899, 902 (Tex.
2009) (noting that voidable judgment is not subject to collateral attack and
must be appealed to be corrected).





[13]See
Tex. R. Civ. P. 329b(e).





[14]See
Tex. Fam. Code Ann. § 105.002(c)(2).





[15]Low
v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings,
134 S.W.3d 835, 838–39 (Tex. 2004).





[16]E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); see
also Low, 221 S.W.3d at 620.





[17]Unifund
CCR Partners v. Villa, 299 S.W.3d 92, 97 (Tex. 2009); Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).





[18]See
LeBlanc v. LeBlanc, 778 S.W.2d 865, 865 (Tex. 1989).





[19]See
Tex. R. App. P. 33.1(a); Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.
1991) (op. on reh’g); see also Tex. R. Evid. 103(a)(1).





[20]Rodriguez
v. Rodriguez, 860 S.W.2d 414, 415 (Tex. 1993).





[21]Id.





[22]Tex.
Fam. Code Ann. § 154.062 (West Supp. 2010).





[23]See
Tex. Fam. Code Ann. § 154.061(b) (West 2008); Office of the Attorney General,
2009 Tax Charts, available at http://www.oag.state.tx.us/cs/taxcharts/2009taxchart.pdf
(last visited August 10, 2011).





[24]456
U.S. 228, 244, 102 S. Ct. 1673, 1683 (1982).





[25]723
S.W.2d 274, 277–78 (Tex. App.—Amarillo 1987, no writ).





[26]See Tex. R. Evid 201(b); see, e.g.,
Tracey Rich, A Gentile’s Guide to the
Jewish Holidays, Judaism 101, http://www.jewfaq.org/holidayg.htm
(last visited August 10, 2011); id. Jewish Holidays, Judaism101,
http://www.jewfaq.org/holiday0.htm (last visited August 10, 2011).





[27]See Colel Chabad Interactive Calendar,
http://www.colelchabad.org/

calendar.bp?gdate=12/1/2016 (last visited August 10, 2011).





[28]See
id.





[29]McCreary
County, Ky. v. Am. Civil Liberties Union of Ky., 545 U.S. 844, 860, 125 S.
Ct. 2722, 2733 (2005) (quotation marks omitted).





[30]Cantwell
v. Connecticut, 310 U.S. 296, 302, 60 S. Ct. 900, 902 (1940).





[31]Knighton,
723 S.W.2d at 277–78 (citations omitted).





[32]See
Tex. R. App. P. 47.1.





[33]See
Tex. R. App. P. 44.1(b); In re L.S.C., 169 S.W.3d 758, 764 (Tex.
App.—Dallas 2005, no pet.).